HELEN KANG (State Bar No. 124730)
ALAN RAMO (State Bar No. 63425)
BRENT PLATER (State Bar No. 209555)
Environmental Law and Justice Clinic
Golden Gate University School of Law
536 Mission Street
San Francisco, California 94105
Tel: (415) 442-6647, Fax: (415) 896-2450
E-mail: hkang@ggu.edu; aramo@ggu.edu; bplater@ggu.edu

ADRIENNE L. BLOCH (State Bar No. 215471)
PHILIP HUANG (State Bar No. 230115)
Communities for a Better Environment
1440 Broadway, Suite 701
Oakland, California 94612
Tel: (510) 302-0430; Fax:  (510) 302-0438
E-mail: abloch@cbecal.org; phuang@cbecal.org

Attorneys for Plaintiff
COMMUNITIES FOR A BETTER ENVIRONMENT

STANZLER FUNDERBURK & CASTELLON LLP
Ruben A. Castellon (Bar No. 154610)
Ross H. Hirsch (Bar No. 204320)
180 Montgomery Street, Suite 1700
San Francisco, California 94104
Telephone: (415) 677-1450; Facsimile: (415) 677-1476

GORDON, WATROUS, RYAN, LANGLEY, BRUNO & PALTENGHI
Bruce C. Paltenghi (Bar No. 83918)
611 Las Juntas Street, P.O. Box 630
Martinez, California 94553
Telephone:  (925) 228-1400; Facsimile:  (925) 228-3644

Attorneys for Defendant
PACIFIC STEEL CASTING COMPANY

## UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| COMMUNITIES FOR A BETTER ENVIRONMENT, a California nonprofit corporation; <br><br>           Plaintiff, <br><br>    v. <br><br> PACIFIC STEEL CASTING CO., <br><br>           Defendant. | Case No.: C 06 4184 BZ <br><br> **CONSENT DECREE** |

WHEREAS, Plaintiff Communities for a Better Environment ("CBE") has filed this action against Pacific Steel Casting Co. ("Pacific Steel");

WHEREAS, CBE's allegations are set forth in its Complaint filed with this Court on July 6, 2006;

WHEREAS, CBE alleges that Pacific Steel has violated and is in violation of emissions limitations and reporting requirements set forth in Pacific Steel's Synthetic Minor Operating Permit ("SMOP"), which the Bay Area Air Quality Management District ("BAAQMD") issued in December 2002, covering, among others, Pacific Steel's Plant 3 steel foundry operations in Berkeley, California ("Facility");

WHEREAS, CBE alleges that the SMOP's emission limitations cover emissions from Source 14 and Source 18 at Plant 3;

WHEREAS, CBE contends that pouring and cooling operations are part of Source 14;

WHEREAS, Pacific Steel has denied the material allegations of CBE's Complaint, and this Consent Decree does not constitute an admission of liability by Pacific Steel;

WHEREAS, in October 2006 Pacific Steel installed a carbon adsorption system at Plant 3, which is targeted to reduce emissions from pouring and cooling operations at Plant 3;

WHEREAS, the parties have agreed that settlement of this matter is in the public interest and that entry of this Consent Decree without further litigation is the most appropriate way to resolve this action;

THEREFORE, IT IS ORDERED, ADJUDGED, AND DECREED as follows:

## I.      JURISDICTION AND PARTIES BOUND

1.      This Court has jurisdiction over the subject matter of this action and over the parties pursuant to section 304 of the Clean Air Act (the "Act"), 42 U.S.C. § 7604, and 28 U.S.C. §§ 1331, 2201, and 2202.

2.      Venue is proper in this Court pursuant to 28 U.S.C. § 1391(b) and 42 U.S.C. § 7604.

3.      CBE's Complaint states claims upon which relief can be granted against Pacific Steel pursuant to section 304 of the Act, 42 U.S.C. § 7604; CBE provided adequate notice of the

CONSENT DECREE
Case No. C 06 4184 BZ

claims alleged in its Complaint pursuant to section 304 of the Act, 42 U.S.C. § 7604(b); and this Court determined in September 2006 that CBE has standing to bring this suit. Pacific Steel consents to, and shall not challenge entry of, this Consent Decree or this Court's jurisdiction to enter, enforce, modify, or terminate this Consent Decree.

4. This Consent Decree shall apply to, and be binding upon the parties and each of their respective directors, successors, and assigns.

5. To the extent that the Consent Decree is in force and not otherwise terminated, if Pacific Steel transfers any majority ownership interest or right to operate the Facility, including but not limited to the sale, lease, or licensing of others to operate all or part of the Facility, Pacific Steel shall give notice of this Consent Decree to any successor in interest prior to the closing date of such transfer. Pacific Steel shall send a copy of such written notification to CBE no later than one week following the closing date of such sale or transfer. Upon sale or transfer of the Facility, Pacific Steel shall attach a copy of this Consent Decree to the agreement by which the Facility is sold or transferred, and shall make performance of Pacific Steel's obligations under this Consent Decree an obligation of any purchaser or transferee to the extent that the Consent Decree is in force and not otherwise terminated. Transfer of ownership of the Facility will not relieve Pacific Steel from the obligations of this Consent Decree that are applicable to it.

## II. DEFINITIONS

6. "Allowed Reductions" mean reductions of (1) PM or HAP emissions, (2) VOC emissions resulting from the use of binders, including Pep Set I or Pep Set II, or (3) emissions covered by either of the two categories above resulting from any of the following projects: installation of a hood or other venting unit tied into the pre-existing carbon adsorption unit in Plant 3 to capture and/or reduce emissions generated in the mold mixing area; upgrading the baghouse and/or baghouse collection system for the electric arc furnace (EAF) in Plant 1; or, where Pacific Steel expends funds to research and test alternative binders for mold-making at the Facility and where BAAQMD permits the use of such binders at the Facility.

7.     "Effective Date" means the date of entry of the Consent Decree by the Clerk of the United States District Court for the Northern District of California.

8.     "Facility" means Pacific Steel's steel foundry, located on Second Street just south of Gilman Avenue near Highway 80 in an area known as West Berkeley, and includes all three plants at this location: Plant 1 (a.k.a. "Facility No. 187"), Plant 2 (a.k.a. "Facility No. 703") and Plant 3 (a.k.a. "Facility No. 1603"), and all sources of emissions from the Facility.

9.     "HAP" means any hazardous air pollutant listed in or pursuant to section 112(b) of the Clean Air Act, 42 U.S.C. § 7412(b), or any Toxic Air Contaminant identified under Cal. Health & Safety Code § 39656.

10.    "West Berkeley" refers to an area within the city of Berkeley, CA bounded by San Pablo Avenue (including both sides of the Avenue) to the East, and the Eastshore Freeway to the West.

## III.    INJUNCTIVE RELIEF—SCRAP METAL SELECTION AND INSPECTION

11.    Beginning within 30 days of the Effective Date, Pacific Steel shall comply with the certification requirements in Paragraph 12 or prepare and implement a plan for the selection and inspection of scrap according to the requirements in Paragraph 13.

12.    Pacific Steel shall operate at all times according to a written certification that the Facility purchases and uses only metal ingots, pig iron, slitter, or other materials that do not include post-consumer automotive body scrap, post-consumer engine blocks, post-consumer oil filters, oily turnings, lead components, mercury switches, plastics, or organic liquids.  Such certifications shall be maintained on site for at least five years.  The written certification plan prepared by Pacific Steel is attached hereto as Exhibit A.

13.    Pacific Steel shall operate at all times according to a written plan for the selection and inspection of iron and steel scrap to minimize, to the extent practicable, the amount of organics and HAP metals in the charge materials used by the Facility.  The written plan prepared by Pacific Steel is attached hereto as Exhibit B and is incorporated herein.  Pacific Steel must keep a copy of the plan onsite and readily available to all plant personnel with materials acquisition or inspection duties.  Pacific Steel must provide a copy of the material specifications

CONSENT DECREE
Case No. C 06 4184 BZ

to each of Pacific Steel's scrap vendors.  Each plan shall include the information specified in Paragraphs 13(a) through (c) below:

a.    A materials acquisition program to limit organic contaminants:  For scrap charged to a scrap preheater, electric arc metal melting furnace, or electric induction metal melting furnaces, specifications for scrap materials to be depleted (to the extent practicable) of the presence of used oil filters, plastic parts, organic liquids, and a program to ensure the scrap materials are drained of free liquids;

b.    A materials acquisition program specifying that the scrap supplier remove accessible mercury switches from the trunks and hoods of any automotive bodies contained in the scrap and remove accessible lead components such as batteries and wheel weights.  Pacific Steel shall obtain and maintain onsite a copy of the procedures used by the scrap supplier for either removing accessible mercury switches or for purchasing automobile bodies that have had mercury switches removed, as applicable.

c.    Procedures for visual inspection of a representative portion, but not less than 10 percent, of all incoming scrap shipments to ensure the materials meet the specifications.

i.    The inspection procedures shall identify the location(s) where inspections are to be performed for each type of shipment.  The selected location(s) shall provide a reasonable vantage point, considering worker safety, for visual inspection.

ii.    The inspection procedures shall include recordkeeping requirements that document each visual inspection and the results.

iii.    The inspection procedures shall include provisions for rejecting or returning entire or partial scrap shipments that do not meet specifications and limiting purchases from vendors whose shipments fail to meet specifications for more than three inspections in one calendar year.

14.    Pacific Steel shall comply with the recordkeeping requirements of the written plan.  Records shall be maintained on site for at least five years.

**IV.    INJUNCTIVE RELIEF—EMISSIONS REDUCTIONS**

CONSENT DECREE
Case No. C 06 4184 BZ

15.    Within 30 days of the Effective Date, Pacific Steel shall establish a reserve fund in the amount of $350,000 for Allowed Reductions.

    a.    The funds shall only be used to achieve and maintain Allowed Reductions totaling at least two tons as set forth below:

        i.    The Allowed Reductions shall be measured from the initial emissions level reflected in an initial emissions inventory report existing as of the Effective Date.  The initial emissions inventory shall be calculated or estimated based on applicable mass balanced-based calculation or EPA or BAAQMD-approved emissions factors, or if no such emission factor exists an emission factor that is used to reliably estimate emissions based upon material throughput.  Within 10 days of the Effective Date, Pacific Steel shall identify in writing and/or provide to CBE a copy of the initial emissions inventory report for purpose of determining compliance with this subparagraph.

        ii.    The total reductions shall be calculated by using the above mass balance approach or multiplying the throughput of material by the applicable emissions factor.

        iii.    Pacific Steel shall provide the calculations of the reductions from proposed expenditures of the funds to the Joint Consultation Committee in the manner provided in Paragraph 18.

    b.    Emissions/toxic substance reductions resulting from reduced steel production or loss of business shall not be counted towards the required two-ton reduction specified in Paragraph 15 and shall not be credited against the fund.  Notwithstanding the above, for purposes of calculating total reductions pursuant to Paragraph 15(a)(ii), material throughputs shall be calculated at the same amounts and rates, as applicable, as those throughputs used to generate the initial emissions inventory set forth in Paragraph 15(a)(i).

    c.    The funds may be used for Allowed Reductions from any plant at the Facility.

d.    The funds shall not be used or credited for emissions/toxic substance reduction expenditures if:

i. The expenditure has been approved by Pacific Steel's Board of Directors on or before November 21, 2006;

ii. The expenditure is as a result of a project or activity which has been specifically identified in writing by the BAAQMD as required to be undertaken by Pacific Steel on or before November 21, 2006;

iii. The expenditure is already required by existing statute or regulation; or

iv. The expenditure arises from implementation of a settlement with the BAAQMD in separate pending litigation;

e.    Expenditures incurred before the Effective Date are entitled to be credited to the fund, provided Pacific Steel has participated in the meet and confer process with the Joint Consultation Committee described in Paragraph 18.

16.    Within 30 days of the three-year anniversary of the Effective Date and subject to Paragraph 17, Pacific Steel shall make a payment to the Rose Foundation for all of the reserve fund that remains (*i.e.,* have not been spent pursuant to Paragraph 15) for projects in West Berkeley that are consistent with Paragraph 15(d).  Pacific Steel shall include with the payment a cover letter, with a copy to CBE, stating the amount of the payment and enclosing a copy of this Consent Decree, with a reference to this Paragraph.

17.    In the event that either the City of Berkeley or BAAQMD has not issued a permit for projects or activities to achieve Allowed Reductions submitted within two years of the Effective Date, due to no fault of Pacific Steel,  the date by which Pacific Steel is required to make the payment to the Rose Foundation specified in Paragraph 16 shall be extended for a period of one year.  The parties agree to negotiate in good faith regarding further extensions to accommodate delays due to no fault of Pacific Steel.  Upon Pacific Steel's request, CBE will write a letter to the City of Berkeley and/or BAAQMD, stating, if applicable, that the Joint Consultation Committee has recommended the project or activity and that it is consistent with this Decree.

CONSENT DECREE
Case No. C 06 4184 BZ

## V.    INJUNCTIVE RELIEF—ESTABLISHING CONSULTATION COMMITTEE

18.    To promote the health of the West Berkeley community and Pacific Steel's employees, and to recommend reserve fund expenditures and projects that achieve the greatest possible pollution reductions, Pacific Steel, the Glass, Molders, Plastics, and Pottery Workers International Union, Local 164B, and CBE shall establish a Joint Consultation Committee to meet and confer in good faith to consider new methods for emissions/toxic substance reductions (e.g., improving baghouse maintenance and design, implementing new technologies at the Facility, reducing toxins in mold coating operations, implementing non-toxic binder materials, etc.). (Although the Union is not a party to this Decree, the Union has agreed to be part of the Joint Consultation Committee.) Any recommendations made by the Joint Consultation Committee are advisory and shall not be binding upon Pacific Steel.

a.    The Joint Consultation Committee shall include no more than two representatives each from Pacific Steel, CBE, and the Glass, Molders, Plastics, and Pottery Workers International Union, Local 164B.

b.    The Joint Consultation Committee may meet on a quarterly basis subject to reasonable advance notice of no less than one month at the request of CBE or Pacific Steel, and a meeting shall not be unreasonably refused by either party.

c.    Joint Consultation Committee meetings may begin prior to the Effective Date.

d.    Joint Consultation Committee meetings may begin before any reserve fund is allocated for Allowed Reductions.

e.    Pacific Steel will disclose to the Joint Consultation Committee any and all records and reports Pacific Steel is required to create by the BAAQMD and documents demonstrating the emission factors proposed to be used for the calculation of the reductions pursuant to Paragraph 15. Disclosure will occur in a reasonable time before joint consultation committee meetings so that members can review the documents before the meeting. Pacific Steel may designate such disclosures Confidential or Highly Confidential as appropriate on a case-by-case basis. CBE may challenge Pacific Steel's confidentiality designations pursuant to

the Court's Stipulated Protective Order, Paragraph 6.1-6.3.  Confidential and Highly Confidential materials may be shared only with CBE's employees, consisting of in-house counsel, officers, directors, experts (subject to limitations set forth in a letter from CBE to Pacific Steel's counsel dated January 22, 2007), and the attorneys of record in this action, if CBE determines disclosure of such information to those attorneys is necessary.

## VI.   INJUNCTIVE RELIEF—SITE INSPECTIONS

19.   Pacific Steel shall provide a CBE staff person and/or CBE's expert consultant with access to the Facility for site inspection for the purpose of monitoring the progress of the construction or implementation, as the case may be, of the emission mitigation projects covered by Paragraph 15 and the plan for inspection and selection of scrap metal, subject to reasonable advance notice.  Such visit shall last no more than two (2) hours, to run from the time CBE enters the Facility.  CBE shall seek permission from Pacific Steel or from the Court for more than three (3) such visits per year.

20.   Pacific Steel shall make available for inspection and review by the CBE staff person and/or CBE's expert consultant any and all records and reports which the BAAQMD has required or requires Pacific Steel to generate and maintain.  Any such inspection may be monitored, at the discretion of Pacific Steel, by up to two employees or representatives.  CBE shall seek permission from Pacific Steel or from the Court for more than four (4) such reviews per year.  To the maximum extent practicable, CBE shall make such reviews coincident with the meetings with the Joint Consultation Committee.

## VII.   ATTORNEY FEES AND COSTS

21.   Within 30 days of the Effective Date, Pacific Steel shall pay CBE $150,000, representing its reasonable attorneys' fees of $115,000 and costs of $35,000.

## VIII.   DISPUTE RESOLUTION

22.   A party shall notify the other party of any alleged violation of this Consent Decree and shall request to confer with the other party to resolve any dispute through the Joint Consultation Committee established in Paragraph 18, which shall meet no later than 30 days from the date written notice of the dispute is provided.  If the dispute is not resolved after 60

CONSENT DECREE
Case No. C 06 4184 BZ

days from the date written notice of the dispute is provided, either party may seek enforcement of this Consent Decree before this Court.

## IX.   GENERAL MUTUAL RELEASE

23.   CBE generally releases and discharges Pacific Steel, its officers, directors, employees, shareholders, and its attorneys from any and all claims, both known and unknown, that CBE may have accrued as of the Effective Date against Pacific Steel its officers, directors, employees, shareholders, and/or its attorneys that relate to any violation of any law, duty, permit, or regulation that applies to Pacific Steel or its attorneys' operations.  Pacific Steel generally releases and discharges CBE, its officers, directors, employees, and its attorneys from any and all claims, both known and unknown, that Pacific Steel may have accrued as of the Effective Date against CBE and/or its attorneys that relate to any violation of any law, duty, permit, or regulation that applies to CBE or its attorneys' operations.  The parties acknowledge that they have had the benefit of legal counsel, and have been advised of, understand and knowingly and specifically waive their rights under California Civil Code § 1542, which provides as follows:

> A general release does not extend to claims which the creditor does not know or suspect to exist in his favor at the time of executing the release, which if known by him must have materially affected his settlement with the debtor.

Notwithstanding these general mutual releases, this Paragraph shall not prevent a party from seeking to enforce the terms of this Decree in the event of a breach of the Decree by the other party.

## X.   DURATION

24.   The parties agree that the Court may close this case administratively after it enters this Consent Decree, but the Court will retain jurisdiction to resolve disputes under or to enforce this Consent Decree.  This Consent Decree shall expire upon expenditure of the reserve fund or where the reserve fund remains on the three-year anniversary of the Effective Date subject to Paragraph 15 or the fourth-year anniversary of the Effective Date, whichever is sooner, pursuant to Paragraph 17.  Notwithstanding the termination of the Consent Decree,

a.   Pollution control changes or requirements adopted pursuant to this Consent Decree will continue in effect, except where (1) there is a change in law or

administrative regulation; or (2) there is a significant, material change in the nature of the facility's operations which would render the requirement of the specific pollution controls unjust or inequitable; and

    b.   The Court will retain jurisdiction to enforce this Paragraph and Paragraphs 11-14 and 18(e)

## XI.   ENTRY OF DECREE

25.   The parties acknowledge that this Consent Decree may not be entered by the Court until 45 days after it is received by the United States Attorney General and the Administrator of the United States Environmental Protection Agency pursuant to section 304(c)(3) of the Act, 42 U.S.C. § 7604(c)(3). CBE shall promptly undertake such service after this Consent Decree is executed by the parties. The parties hereby agree that this Court may enter this Consent Decree without further consent from either party after the 45-day period expires, and that the parties may not withdraw from the Consent Decree for any reason. After the expiration of the 45-day period, any party to this Consent Decree may file an unopposed request that the Court enter this Consent Decree or the Court may enter the Decree on its own motion.

CONSENT DECREE
Case No. C 06 4184 BZ

**XII.    MISCELLANEOUS**

26.    All notices or copies of documents required to be provided by this Decree shall be addressed and mailed as follows:

Plaintiff:
Adrienne L. Bloch
Communities for a Better Environment
1440 Broadway, Suite 701
Oakland, CA 94612

Helen Kang
Environmental Law and Justice Clinic
Golden Gate University School of Law
536 Mission Street
San Francisco, CA 94105

Defendant:
Ruben A. Castellon
Stanzler, Funderburk & Castellon LLP
180 Montgomery Street, Suite 1700
San Francisco, California 94104

27.    This Consent Decree contains the entire agreement between the Parties.  This Consent Decree may not be enlarged, modified, or altered unless such modifications are made in writing and approved by all parties and the Court.

IT IS SO ORDERED this _____16th_____ day of _____March_____ 2007.

_____
Bernard Zimmerman
United States M

IT IS SO ORDERED
Judge Bernard Zimmerman

//
//
//
//
//
//
//
//
//

CONSENT DECREE
Case No. C 06 4184 BZ

1 │ IT IS SO AGREED by Plaintiff:

2

3                                         Bill Gallegos
                                          Executive Director
4                                         Communities for a Better Environment

5

6
    │ IT IS SO AGREED by Defendant:
7

8

9                                         Robert Delsol
                                          President/CEO
10                                        Pacific Steel Casting Company

11

12

13

14

15

16

17         Case 3:06-cv-04184-BZ   Document 64   Filed 03/15/2007   Page 13 of 18

18

19

20

21

22

23

24

25

26

27

28

                                                         [PROPOSED] CONSENT DECREE
                                 13                       Case No. C 06 4184 BZ

1   IT IS SO AGREED by Plaintiff:

2

3                                    _____
                                     Bill Gallegos
4                                    Executive Director
                                     Communities for a Better Environment
5

6   IT IS SO AGREED by Defendant:

7

8

9                                    _____
                                     Robert Delsol
10                                   President/CEO
                                     Pacific Steel Casting Company
11

12

13

14

15

16

17   Case 3:06-cv-04184-BZ    Document 64    Filed 03/15/2007    Page 14 of 18

18

19

20

21

22

23

24

25

26

27

28

                           13                    [PROPOSED] CONSENT DECREE
                                                 Case No. C 06 4184 BZ

# PACIFIC STEEL CASTING COMPANY
## WRITTEN CERTIFICATION

- **Pacific Steel Casting Company will purchase and use only metal ingots, pig iron, slitter, or other materials that do not include post-consumer automotive body scrap, post-consumer engine blocks, post-consumer oil filters, oily turnings, lead components, mercury switches, plastics, or free organic liquids.**

- **<u>Vendor Notification</u>**

  - As part of this Certification, PSC shall notify each scrap vendor, in writing, that any deliveries of scrap material to PSC shall not include post-consumer automotive body scrap, post-consumer engine blocks, post-consumer oil filters, oily turnings, lead components, mercury switches, plastics, or free organic liquids.

  - Each Request For Quote (RFQ) and Purchase Order (PO) provided to a scrap vendor shall include, in writing, a list of the above-noted items which shall not be included in delivered scrap.

  - PSC shall maintain the vendor notifications on site for five (5) years.

- **<u>Visual Inspection of All Incoming Scrap</u>**

  - All scrap deliveries to PSC must be visually inspected according to the procedures outlined in the Scrap Metal Selection and Inspection Plan, a copy of which is attached hereto.

- **<u>Recordkeeping</u>**

  - **<u>The recordkeeping requirements are specified in the Scrap Metal Selection and Inspection Plan.</u>**

Exhibit A

# PACIFIC STEEL CASTING COMPANY
# SCRAP METAL SELECTION
# AND INSPECTION PLAN

- **Material Acquisition Plan**

  - PSC shall notify each scrap vendor, in writing, that any deliveries of scrap material to PSC shall not include post-consumer automotive body scrap, post-consumer engine blocks, post-consumer oil filters, oily turnings, lead components, mercury switches, plastics, or free organic liquids.

  - Each Request For Quote (RFQ) and Purchase Order (PO) provided to a scrap vendor shall include, in writing, a list of the above-noted items which shall not be included in delivered scrap.

  - PSC shall maintain the vendor notifications on site for five (5) years.

- **Visual Inspection of All Incoming Scrap**

  - All scrap deliveries to PSC must be visually inspected (at least 10% of the shipment must be inspected from a vantage point that is amenable to inspection -- e.g., dumped onsite at PSC or on delivery vehicle) to make sure that each delivery does <u>NOT</u> contain the following:
    - Automotive Body Scrap
    - Engine Blocks
    - Lead Components
    - Mercury Switches
    - Plastic Parts
    - Free Organic Liquids
    - By-Products
    - Cans
    - Cylinders
    - Used oil filters and other lubricants
    - Dirt
    - Galvanized, I-Beam, paint, pipe, skeleton, tubing or turning

  - Any scrap shipment that includes any amount of the above prohibited materials shall be rejected in part or in whole. Any rejected scrap shipment remaining on site shall be sequestered or visibly marked until delivery is returned to the vendor or disposed of.

  - A written record (**Scrap Inspection Report – attached as Appendix A**) shall be kept of all shipments that have been rejected. The scrap supervisor (or other employee designated by PSC) shall send a written corrective action letter to the scrap vendor for any delivery that fails the meet the above-noted specifications.

Exhibit B

**PACIFIC STEEL CASTING COMPANY**
**SCRAP METAL SELECTION**
**AND INSPECTION PLAN**

- The scrap supervisor (or other employee designated by PSC) shall examine the written records each December of every calendar year and determine which vendors, if any, have failed to meet the above-noted specifications for more than three (3) inspections in one calendar year. PSC shall request of any such vendor to provide PSC with a list of remedial measures the vendor is implementing or plans to implement to prevent future non-confirming scrap orders. If the vendor does not comply with PSC's request or the proposed remedial measures are insufficient to ensure that future shipments will meet the specifications, PSC shall cease to purchase any scrap metal from the vendor, until the vendor implements corrective actions to PSC's satisfaction.

Exhibit B

Case 3:06-cv-04184-BZ   Document 64   Filed 03/15/2007   Page 18 of 18

PACIFIC STEEL CASTING
F521, SCRAP DELIVERY INSPECTION REPORT - APPENDIX A

PLANT - 1 _____ PLANT - 2 _____ PLANT - 3 _____

10 % OF EACH DELIVERY INSPECTED

| DATE | PO # | INSPECTOR SIGNATURE | ACCEPTABLE | | IF NO - CHECK ALL THAT APPLY | | | | | | | | | | |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | YES | NO | ENGINE PARTS/ AUTO BODY SCRAP | OIL/OIL FILTERS | PLASTIC | PAINTED MATERIAL/PA INTED CANS | GALV. MATERIAL | FREE ORGANIC LIQUIDS | MERCURY SWITHCES | BY PRODUCTS | LEAD PARTS | CANS/ CYLINDERS | DIRTY MATERIAL |
| | | | | | | | | | | | | | | | |
| | | | | | | | | | | | | | | | |
| | | | | | | | | | | | | | | | |
| | | | | | | | | | | | | | | | |
| | | | | | | | | | | | | | | | |
| | | | | | | | | | | | | | | | |
| | | | | | | | | | | | | | | | |
| | | | | | | | | | | | | | | | |
| | | | | | | | | | | | | | | | |
| | | | | | | | | | | | | | | | |
| | | | | | | | | | | | | | | | |
| | | | | | | | | | | | | | | | |
| | | | | | | | | | | | | | | | |

FORM DOCUMENT - F512 (REVISED 01/19/07)